The final case for today is McCoy v. United States. Mr. Allen. Thank you, Your Honor, and may it please the Court, I am Scott Allen on behalf of Petitioner-Appellant Christopher McCoy. This court in Hardin was the first court to recognize that magistrate judges cannot accept felony guilty pleas because the task is no less important than conducting a felony trial. This court found that the statutory violation was clear, and this reasoning also compels the conclusion that delegating either the conducting of a felony trial or the acceptance of a felony plea violates Article III, Section 1 of the Constitution. Now, we, of course, didn't reach, explicitly did not reach in Hardin the constitutional question because we had decided on statutory grounds. Yes, that is correct, Your Honor. And you would agree that, given that this is a 2255, it's the Constitution or nothing at this point. Your Honor, we, the Constitution, we are required to have a constitutional claim, however, the Ninth Circuit Unless you're making a claim of actual innocence, which I gather you are not. No, that's not the case. You're not making a claim, in other words, under Davis back in 1974. No, however, the Ninth Circuit in English found that a claim based on Gomez was constitutionally based for the purposes of a 2255 motion. And do you think that would be true after Wellness? Your Honor, I'm not, so in Wellness, I understand that the relevance to Wellness deals with consent, and in this case it technically involved bankruptcy cases. Yes. But it also pointed out that magistrate judges are assigned duties in part because they are part of the district court. And in this case, the sentence was imposed by an Article III judge. Yes, that is correct, but the acceptance of the plea itself was performed by the magistrate judge. It's hard for me after Wellness to see why that would be a constitutional problem if the final decision is made by an Article III judge. But under Wellness, the court still says that you cannot by consent cure an actual violation of Article III. So consent is one factor that courts consider in determining whether there is an Article III violation, but you also have to look at the importance of the right, the extent to which the district judge reviews the decisions made by the magistrate. Well, and I guess I would ask the question in a slightly different way. The question I have is what your authority would be for the idea that Article III tolerates the assignment by consent to non-Article III officers of civil matters and perhaps misdemeanors, but that Article III does not tolerate the delegation of something as consequential as a finding of guilt in a criminal felony setting? Because that's the line you're asking us to draw. Now, if we were under the statute, I think it would be a very easy argument because the statute specifies the things that magistrate judges can have. But where does the Constitution draw that line? So the Federal Magistrates Act is a very broad grant of authority. Right. I know. And I'm saying I'm going to assume for the sake of this argument that if you were here on a direct appeal, maybe making a plain error complaint about the magistrate judge, a combination of our decision in Hardin and perhaps the Supreme Court's decision in Yen and some other things might get you where you need to go. But wellness does tolerate consent, right, at the bankruptcy judge level. So why are felonies different? And I think that's the distinction that this court drew in Hardin is that felonies are, in addition to consent, you have to look at the importance of a right, whether the district judge is reviewing it, and what Congress spoke to. And that's part of the total analysis of the Article III violation. And I think in this case felony trials are of the utmost importance. There's a serious deprivation of liberty that's at stake. Well, there is. But there's also the point that Judge Easterbrook raised. We know from other cases that there certainly are some things that magistrate judges can do in the processing of a felony case. And the final judgment in your client's case was, in fact, entered by an Article III judge. So the question is, is this interim step, very important interim step that it is? I don't disagree with you about the importance of it, but it's still an interim step. It's the finding of guilt. Is that somehow so separate that you can't give it to an Article I judge as a matter of constitutional law, not as a matter of the Federal Magistrates Act? Yes, and the reason is that once the plea is accepted, the defendant can only withdraw for a fair and just reason. But that's more liberal than, say, a new trial standard. That's a very liberal standard before the sentence has been imposed. And, of course, there's no sentence until you've got the Article III judge. But why would that matter? Your client didn't ask the Article III judge to take back the guilty plea. Your client seemed to be happy. No, but, again, consent does not change the analysis. You can't, by consent, allow a non-Article III officer to— I could sort of understand an argument that if there had been a complaint, the Article III judge had to give it an original one-sided, the same way the Article III judge does in suppression motions. If there's a complaint, the magistrate judge has heard the motion to suppress. It's resolved any conflict in the testimony. If you complain, it goes to the Article III judge, who's supposed to do this from scratch, or de novo, as they sometimes say. So I could imagine an argument that that would be the right stance for dealing with an objection to the Rule of Eleven colloquial request to withdraw the plea. But it's very difficult for you to make because your client didn't ask the judge to withdraw the plea. Yes, but, again— Do you think a criminal defendant in a felony case could consent to have the first person who walks in the door of the Dirksen federal courthouse resolve his case? Let's assume the U.S. attorney thinks that's fine. So let's maybe make both parties consent to that. Would that be a valid adjudication in a federal court? No, Your Honor, and that's exactly the point. And it's not about—the acceptance of a plea isn't about the qualifications of a magistrate judge to perform the task. You could have distinguished law professors perform the task. Even if it were a former district court judge, David Kor, or somebody in whom we all have great confidence. And, yeah, it's not about the confidence in the person to perform the task. It's about whether they have the constitutional authority, whether they're appointed by the president, confirmed by the Senate, have lifetime tenure, and have the protections that are necessary for Article III. So does that shake your confidence at all, though, in the constitutionality of the Federal Magistrates Act? Because that's not a direction we are free to go in. The Federal Magistrates Act, under the Additional Duties Clause, only provides authority as is not inconsistent with federal laws and the U.S. Constitution. So I don't think that this court would not have to call into question the Federal Magistrates Act. Does the Constitution ever require an Article III judge in a civil case? The civil cases do not have the same liberty, interest, and at stake as felony cases. I mean, we do have the language in Gomez, although it's probably dicta, where the Supreme Court, discussing this, says, by a literal reading, this Additional Duties Clause would permit magistrates to conduct felony trials, but the carefully defined grant of authority to conduct trials of civil and minor criminals should be construed as withholding of the authority. So the Court's construing the statute to avoid at least a potential constitutional problem. But you're asking us to confront that constitutional problem. Yes, Your Honor, and I think in this case this is an appropriate vehicle to do so. And I'd like to reserve the balance of my time. I'll let you save a minute. Mr. Liggins. Good afternoon, Your Honors. My name is Tom Liggins, and I wasn't the attorney below, but I have read the briefs and tried to familiarize myself with the law for the argument today. The big picture on this, as I see it, is that the petitioner can't meet the requirements for overcoming his procedural default on this issue. But if it's structural error, then the procedural default analysis is quite different. And I take it we, I don't know whether you would agree with this or not, that my hypothetical of agreeing that the next person who walks in the door of the courthouse is going to preside over a federal felony case would be of some constitutional concern. The Supreme Court has found constitutional problems in the allocation of non-Article III judges in the Yen case, although that was appellate. And they said, they went out of their way to say it doesn't matter how intelligent, how wonderful, you know, how otherwise qualified the person is, Article III is Article III. So why doesn't that apply to felonies? Well, I guess as a preliminary matter, I'm not sure that prejudice necessarily gets written out of the equation just because it's deemed a structural error. How can you ever show prejudice, you know, if you didn't have a lawyer or if you didn't have some of the other things that the Supreme Court has recognized as structural error? These are the things that are just so fundamental. I mean, maybe if you have a biased decision maker, you had a perfectly good trial. But they're so fundamental that we don't ask for a showing of prejudice. And I believe that in the structural error cases, if you look at them, we don't say that just because something is structural error, we're not going to require prejudice. There is an analysis that courts go through before declaring something as a structural error. One of those is that, but it all has to involve big rights. It has to deprive things that would otherwise violate the Constitution. Well, of course. And the identity of the decision maker in a federal court is not a matter of small importance. There's a right not to have a biased decision maker. And I would have thought that when the judicial power of the United States is being exercised, you have a right to an Article III judge. And again, that goes back to how do we go about deeming something a structural error in the first instance? And there's really three categories. In looking at the cases, it appears to me that there are those errors that are big and that they obviously implicate or that the violation of it was obviously prejudicial. That's one area of structural error. Where are you getting these three categories from? The Supreme Court has discussed what counts as structural errors in cases like Nader. But they're not all the same. All of the errors being identified don't fit into the same category. One of the big categories is where it's a big error and the prejudice is obvious. You have other errors where it's a big error and we can't figure out what the prejudice is. That's like this court's decision in Harbin, which is not the Harding case, but the Harbin case, where this court said complete denial of perentory or allowing the prosecutor to exercise perentory challenges in the middle of trial is a great big error. And we can't tell whether or not it's prejudicial. So you agree that there are some structural errors, and this may be one of them, where it's really going to be very difficult to know whether having an Article III judge sitting on the bench presiding over a felony trial versus having some excellent lawyer from town sitting on the bench adjudicating the felony trial. Who can tell? And you can't tell. That is our position. You can't tell. And so you're saying it's never prejudicial, and the Supreme Court seems to say that is a situation in which it should be deemed prejudicial. I believe in the situation you're talking about, it fell into the category of those big errors that we cannot tell whether or not it was prejudicial. In this case, we can tell because there's a transcript of the proceeding. No, we can't tell in this case. We have no idea. I mean, that's enough to just eliminate this whole Article III, Article I distinction, which some people think we should have done long ago anyway. But there's nothing that particularly distinguishes Article III judges other than the process that we happen to go through to get the job. And I hesitate to agree with that. You can agree with that because it's true. We know that. But I still, and I guess it may be a hill I'm choosing to die on, I still think that we can tell whether or not there was prejudice in this case. And we can tell whether or not there was prejudice because the judge assigned to this, while an Article I judge followed the exact procedures, said the exact same words, some would say he did it even better. And he probably would have given the guy a 327-month sentence, too. But that would have been the final judgment entered in the case. And I take it even you would agree that the magistrate judge has no authority to do that. Well, the magistrate judge didn't actually impose the sentence. I'm saying if. First of all, I'm saying the magistrate judge probably or very arguably would have chosen the same sentence for this man. And under your theory, that's also a no prejudice. I don't know that I would be making the same argument because whether or not you follow a Rule 11 colloquy is a lot easier call to make in the prejudice department than whether or not a different judge would have imposed a different sentence given a different set of facts. I guess all I'm arguing is on the facts of this case, on the record that they can use to establish prejudice, given that this involves a Rule 11 colloquy, they can't do it. And that's even with getting into the cause for the procedural default, which I don't believe they've established that either. But seeing that there are no further questions from the court, I will yield the remainder of my time if there are no questions on that issue. All right. I apparently not, so thank you very much. I will give you a full minute, Mr. Allen, although your time was waning. On the point of procedural default, Mr. McCoy has cause for not raising his argument earlier because this court was the first court to decide that magistrate judges cannot accept felonies. In Boosley, there was circuit law squarely against the proposition, and the Supreme Court said that is still not cause for failing to raise it. Yes, but here, every single court to decide it, including the 4th, 10th, and 11th circuits, all held that there is no reason. Yes, and in Boosley, the home circuit had also decided against it, and the justices said that was not cause. So I'm trying to figure out how your position can be distinguished from the position expressly rejected in Boosley. My understanding of Boosley is that there was favorable precedent elsewhere, and here there is no favorable precedent in another circuit. How do you think it was that Hardin raised this issue? Just because one litigant raises an argument doesn't mean that there is cause. If you would like to conclude with one final thought, you may do so. Just to answer your question, the standard has never been that you have to be the first litigant to prevail. This court did make a departure from other circuits, and with that, we ask you please allow Mr. McCoy to withdraw his case. Thank you. All right, we thank you, and you were appointed, were you not, by this court? Yes. We appreciate your assistance to your client and to the court, and thanks as well to Mr. Liggins. Thank you. We will take the case under advisory.